UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MEDCAPGROUP, LLC,<br><br>          Plaintiff,<br><br>vs.<br><br>PRAXSYN, INC., formerly known as MESA PHARMACY, INC.,<br><br>          Defendant.<br>_____<br>PRAXSYN, INC., formerly known as MESA PHARMACY, INC.,<br><br>          Counterclaimant,<br><br>vs.<br><br>MEDCAPGROUP, LLC,<br><br>          Counter-Defendant.<br>_____<br>PRAXSYN, INC., formerly known as MESA PHARMACY, INC.,<br><br>          Third Party Plaintiff,<br><br>vs.<br><br>DAVE BROWN, an individual,<br><br>          Third Party Defendant.<br>_____ | Case No. 2:14-cv-1864-JAD-GWF<br><br>**ORDER AND FINDINGS<br>AND RECOMMENDATION** |

This matter is before the Court on Plaintiff MedCapGroup, LLC's ("MedCap" or "Plaintiff") Motion to Enforce Settlement (ECF No. 58), filed on July 20, 2016. Defendant Praxsyn, Inc., formally known as Mesa Pharmacy ("Mesa" of "Defendant") filed an Opposition (ECF No. 65) and Countermotion for Order to Show Cause (ECF No. 66) on August 5, 2016. Third-Party

Defendant/Fourth-Party Plaintiff Dave Brown ("Brown") filed a Joinder (ECF No. 59) to Plaintiff's Motion to Enforce Settlement and a Reply (ECF No. 67) to Defendant's Opposition on August 10, 2016.  The Court conducted an evidentiary hearing in this matter on September 22, 2016. Following the hearing, Brown and Plaintiff filed Post Hearing Briefs (ECF Nos. 74 and 75, respectively).  Defendant filed an opposition to each brief.  (*See* ECF Nos. 77 and 78).

## BACKGROUND

Mesa, which is in the business of providing compound prescription services, generates substantial accounts receivable as a result of the claims it makes to patient's insurance carriers for payment of the prescriptions. *Complaint* (ECF No. 1), ¶¶ 7–9.  In order to receive faster payment, Mesa sells its accounts receivable to third parties at a discounted rate. ¶ 12.  Those parties in turn pursue collection of the accounts from the insurance carriers.  MedCap entered into several purchase agreements with Mesa in 2012, whereby MedCap acquired $586,910.58 in face value accounts receivable.  ¶ 17.  These accounts receivable included several different patient accounts from select dates of service and were not based on individual patients.  ¶¶ 14–16.  After MedCap acquired the accounts receivable, it learned that the insurance companies will only deal with one collection party per patient account.  ¶¶ 24–25.  Based on this information, MedCap filed its Complaint on November 7, 2014 alleging claims against Mesa for breach of contract, breach of the covenant of good faith and fair dealing, intentional misrepresentation, fraud in the inducement, and violations of Nevada Revised Statute § 598.015.  Thereafter, Mesa filed a Third-Party Complaint against Dave Brown, asserting that Brown is liable to Mesa for all or part of MedCap's claims against Mesa because Brown was in charge of arranging MedCap's purchase of the accounts receivable.  *See Third Party Complaint* (ECF No. 6).

The Court held a settlement conference on May 5, 2016, wherein the parties agreed on settlement.  (*See* ECF No. 55).  At the conclusion of the settlement conference, the parties signed a Memorandum of Settlement Agreement prepared by the Court, which instructed the parties to "execute a written settlement agreement(s) and releases of all claims pursuant to [the] Agreement." *See Motion to Enforce Settlement* (ECF No. 58), Exhibit A.  The Memorandum of Settlement Agreement provided, in relevant part:

    2. Third Party Defendant Dave Brown shall pay to Plaintiff MedCapGroup, LLC the total amount of Twenty Five Thousand Dollars ($25,000.00), which shall be paid within 10 days of the execution of the settlement agreements or release of claims;

    3. Defendant Mesa shall pay to Plaintiff MedCapGroup, LLC the total amount of One Hundred Seventy Five Thousand Dollars ($175,000.00) which shall be paid as follows:

        a.    An initial payment of Twenty Five Thousand Dollars ($25,000.00) shall be paid within 10 days of the execution of the settlement agreements or release of claims;

        b.    Defendant Mesa shall thereafter make five monthly installment payments of Thirty Thousand Dollars ($30,000.00) each, with the first installment payment due on or before 30 day after the initial payment, and each subsequent installment payment due 30 days thereafter, or as set forth in the payment schedule to be attached to the final settlement agreement between the parties.

        . . .

    5. Plaintiff MedCapGroup, LLC agrees to appoint Defendant Mesa as its collection agent on the accounts receivable that are the subject of the party's Health Care Accounts Receivable Purchase Agreement. Any amounts collected by Defendant Mesa may be applied by it toward the payments due to Plaintiff MedCapGroup, LLC pursuant to this settlement. Plaintiff MedCapGroup, LLC will assign said accounts receivable to Defendant Mesa as they are collected and paid to Plaintiff MedCapGroup, and shall assign any and all accounts receivable still remaining upon receipt of all payments from Defendant Mesa.

    6. The parties will execute a written settlement agreement(s) and releases of all claims pursuant to this Agreement. The parties will file a stipulation and order for dismissal, with prejudice, of Defendant Mesa's Third Party Complaint against Dave Brown and of Dave Brown's Fourth Party Complaint in this action upon receipt by Plaintiff of Dave Brown's payment pursuant to the terms of this settlement. Plaintiff MedCapGroup and Defendant Mesa will file a stipulation and order for dismissal, with prejudice, of all other claims in this action upon payment of all monies due under this agreement.

*Id.*

Following the conference, the parties began circulating proposed settlement agreements. *Motion to Enforce* (ECF No. 58), pg. 2. After Mesa reviewed the proposed settlement agreement, it advised MedCap that it required language regarding the filing of liens on the accounts receivable. *Id.* at pg. 3. Mesa believed that this was a material term of the settlement agreement and that it had been discussed during the settlement conference. *Opposition* (ECF No. 65), pg. 3. In fact, Mesa asserted that it only agreed to the terms contained in the Memorandum of Settlement Agreement

based on MedCap's representations during the settlement conference that liens had been properly filed on the accounts receivable. *Id.* Initially, MedCap agreed to include language in the settlement agreement stating that the liens had been filed for the accounts receivable and represented that it had in fact done so. *Id.* at Exhibit C. However, Mesa discovered that MedCap did not timely file the liens and sought to renegotiate the terms of the settlement agreement—including proposing a reduced settlement amount that was summarily rejected. *Id.* at pg. 4.

As a result of this impasse, MedCap brought the instant motion to enforce settlement arguing that filing liens on the accounts receivable was not a term or condition of the parties' settlement agreement. Mesa argues, however, that the filing of the liens and MedCap's representation that it had done so was essential to its decision to enter into the settlement agreement in the first place. Third-Party Defendant Brown believes that the Memorandum of Settlement Agreement should be enforced as to all parties, but at the very least should be enforced as to the terms that deal with his role in this litigation. *Post Hearing Brief* (ECF No. 74), pg. 2. Brown argues that "[t]here is no disagreement as to the terms of the parties' settlement with Brown set forth in Paragraphs 2 and 6 of the Memorandum of Settlement Agreement." *Id.* at 2:5–6. Mesa disagrees and asserts that the parties reached a global settlement, the terms of which were all interrelated. *Response to Dave Brown's Post Hearing Brief* (ECF No. 77), pg. 2.

## DISCUSSION

A settlement agreement is a contract and "its construction and enforcement are governed by principles of contract law." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). Therefore, basic principles of contract law apply: offer and acceptance, meeting of the minds, and consideration. *Id.* Preliminary negotiations do not constitute a binding contract unless the parties have agreed to all material terms. *Id.* If material terms are lacking or are insufficiently certain and definite, a valid contract does not exist. *Id.* However, a contract may be formed when the parties have agreed to the material terms, even though the contract's exact language is not yet finalized. *Id.* A court may not compel compliance with a settlement agreement if material terms remain uncertain. *Id.* Rather, the court must be able to ascertain what is required of the respective parties. *Id.*

. . .

## I. Enforcement of Settlement as to MedCap and Mesa

MedCap argues that whether or not liens had been filed on the accounts receivable has no bearing on the terms of the settlement. *See Plaintiff's Post Evidentiary Brief* (ECF No. 75). It believes that this is clear from the fact that there is no reference to the liens in the Memorandum of Settlement Agreement and from the fact that Mesa did not calculate the net value of the accounts receivable until weeks after the settlement conference. *Id.* MedCap argues that there has been no mutual mistake and if there was a mistake, Mesa is the party burdened with the risk of that mistake. *Id.* The Court finds that MedCap's attempt to cloak the issues surrounding the settlement as a unilateral mistake by Mesa is unpersuasive. Mesa is not claiming that it was mistaken about the terms of the settlement. *Opposition to Post Hearing Brief* (ECF No. 78), pg. 6. Rather, it argues that during the settlement conference MedCap—through its representative, Martin Mazzara—represented that the liens had been filed on the accounts receivable and Mesa justifiably relied on that representation. *Id.* at pg. 3–5.

During the course of the settlement conference, the undersigned Magistrate Judge recalls that the parties discussed whether liens had been properly filed by MedCap. As Mesa argues, and as the undersigned remembers, these discussions and MedCap's representations that liens had been filed, played an integral role in Mesa's decision to agree to a settlement amount. In addition, the Court may consider the parties' post-contracting conduct and statements to assist it in interpreting the terms of the agreement. *See City of Hope Nat'l Med. Ctr.*, 43 Cal.4th at 393, 75 Cal.Rptr.3d 333, 181 P.3d 142 (2008); *Oceanside 84, Ltd. v. Fidelity Federal Bank*, 56 Cal.App.4th 1441, 1449, 66 Cal.Rptr.2d 487 (1997). MedCap's post-contracting statements are telling here. When the parties were circulating the proposed settlement agreements, Mesa requested that MedCap's counsel include language that the liens had been filed for the accounts receivable. MedCap's counsel had no issue with that request and stated that "MedCap is comfortable making that representation." *See Opposition* (ECF No. 65), Exhibit C. MedCap's counsel also affirmatively stated on June 21, 2016 that his clients (MedCap) timely filed the liens for the accounts receivable. *Id.* at Exhibit F. The Court infers from this conduct that Mesa's belief and reliance on the fact that the liens were filed on the accounts receivable came at no surprise to MedCap following the settlement conference. Based

on the foregoing, the Court finds that the filing of liens on the accounts receivable was material to the parties' agreement and that the Court cannot enforce the Memorandum of Settlement Agreement based on Mesa's subsequent discovery that the liens were not filed.

## II.  Enforcement of Settlement as to Dave Brown

Brown argues that the settlement terms surrounding his involvement in this action should be enforced because there is no disagreement as to the terms of the parties' settlement with Brown. *See Dave Brown's Post Hearing Brief* (ECF No. 74), pg. 2.  He further asserts that the terms of his settlement with the parties are not contingent on the settlement between MedCap and Mesa. *Id.* The Court disagrees.  As Mesa argues, this was a global settlement.  Brown's payment of $25,000 to MedCap in return for Mesa's dismissal of its claims against Brown were tied to the fulfillment of all other settlement terms.  The interrelated nature of this settlement makes it impossible for the Court to enforce the terms regarding Brown only.  Accordingly,

## ORDER

**IT IS HEREBY ORDERED** that Defendant's Countermotion for an Order to Show Cause (ECF No. 66) is **granted**.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff MedCapGroup, LLC's Motion to Enforce Settlement (ECF No. 58) be **denied** and that the District Court find that there is no enforceable settlement between the parties.

. . .
. . .
. . .
. . .
. . .
. . .
. . .
. . .
. . .

**NOTICE**

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 4th day of November, 2016.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge