UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MEDCAPGROUP, LLC,<br><br>　　　Plaintiff<br><br>v.<br><br>PRAXSYN, Inc. fka MESA PHARMACY, INC,<br><br>　　　Defendant<br>_____<br><br>all other claims and parties | 2:14-cv-01864-JAD-GWF<br><br>**Order Re: Motion to Enforce Settlement**<br><br>[ECF Nos. 58, 83, 86] |

　　　MedCapGroup, LLC sues prescription-medicine compounder Mesa Pharmacy,[1] alleging that Mesa's undisclosed conduct before selling certain of its accounts receivable to MedCap rendered those accounts uncollectible.  Although a settlement conference with the magistrate judge yielded a resolution, it fell apart when the parties tried to reduce their deal to writing.  Crossmotions over the agreement's enforceability were filed.  Mesa argues that its assent was based on MedCap's in-conference representation that MedCap had secured the lien rights for the accounts receivable—a material fact that Mesa learned was untrue soon after the settlement conference.  MedCap insists that lien status was so irrelevant to the deal that it was never even discussed.[2]

　　　After extensive briefing, an oral argument, and an evidentiary hearing, the magistrate judge who presided over the settlement conference sided with Mesa.  Crediting the testimony of Mesa's witnesses as consistent with his own memory of the settlement discussion, and finding that MedCap's post-contracting statements corroborate that its "representations that liens had been filed played an integral role in Mesa's decision to agree to a settlement amount," Magistrate

---

[1] Mesa is now known as Praxsyn, Inc.

[2] ECF Nos. 58, 66.

Judge Foley recommends that I deny the motion to enforce the settlement.[3]  MedCap objects.[4]  After a de novo review, I adopt the recommendation, deny the motion to enforce the settlement, and send this matter back to Magistrate Judge Foley for another settlement conference.[5]

**Discussion**

**A.     Legal Standards**

"It is [ ] well settled in the usual litigation context that courts have inherent power summarily to enforce a settlement agreement with respect to an action pending before it."[6]  "[A] motion to enforce [a] settlement agreement essentially is an action to specifically enforce a contract," and "[a]n action for specific performance without a claim for damages is purely equitable and historically has always been tried to the court."[7]  An enforceable settlement contract requires "an offer and acceptance, meeting of the minds, and consideration."[8]  "A meeting of the minds exists when the parties have agreed upon the contract's essential terms."[9]  "Which terms are essential [i.e., material] 'depends on the agreement and its context and also on the subsequent conduct of the parties, including the dispute [that] arises and the remedy sought.'"[10]

Magistrate Judge Foley presided over the May 5, 2016, settlement conference for the

---

[3] ECF No. 83.

[4] ECF No. 86.

[5] I find these matters suitable for disposition without oral argument or further evidentiary hearing.

[6] *Dacanay v. Mendoza,* 573 F.2d 1075, 1078 (9th Cir. 1978) (citations omitted).

[7] *Adams v. Johns–Manville Corp.,* 876 F.2d 702, 709 (9th Cir. 1989) (internal citations omitted).

[8] *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005).  This is a diversity case, so I apply Nevada law on the enforceability of settlement agreements.

[9] *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 255 (Nev. 2012) (citing *Roth v. Scott*, 921 P.2d 1262, 1265 (Nev. 1996)).

[10] *Certified Fire Prot.*, 283 P.3d at 255 (quoting Restatement (Second) of Contracts § 131 cmt. g (Am. Law Inst. 1981)).

parties in this case, carefully considered their exhaustive briefing[11] about the enforceability of the settlement agreement reached at that conference, and heard oral argument and the testimony of four witnesses at the September 22, 2016, evidentiary hearing.[12] He provided a clear description of the background of the settlement efforts and the dispute that precipitated this motion,[13] which I have independently confirmed is accurate and adopt without repeating here. The thrust of the parties' deal was that Mesa would pay MedCap $175,000, and Mesa would become MedCap's collection agent on the accounts receivable so it could try to collect on them. Any amounts that Mesa collected would reduce its $175,000 settlement-payment obligation. Mesa contends that MedCap's representative Martin Mazzara represented during the settlement conference that proper liens had been filed on all of these accounts (which would increase Mesa's likelihood of collecting on these accounts and reducing its settlement payment), and Mesa claims that Mazarra's lien assurances were material to its agreement to pay such a large sum. Mazzara denies making this representation, and MedCap claims that the ability to collect on these accounts was irrelevant to the deal.[14]

Based on his own recollection of the settlement discussions and what he could reasonably infer from MedCap's post-contracting conduct, Magistrate Judge Foley concluded that MedCap's filing of liens on the accounts receivable "was material to the parties' agreement and that the Court cannot enforce the Memorandum of Settlement Agreement based on Mesa's subsequent discovery that the liens were not filed."[15] MedCap objects to these findings and

---

[11] ECF Nos. 58, 59, 65, 66, 67, 74, 75, 77, 78.

[12] ECF Nos. 68 (oral argument minutes); 70 (evidentiary hearing minutes); 76 (transcript of evidentiary hearing).

[13] ECF No. 83 at 2–4.

[14] *Id*. at 4–5.

[15] *Id*. at 5–6.

recommendations.[16]  When a party files specific written objections to a United States Magistrate Judge's findings and recommendations,[17] the district court must make a de novo determination of those portions of the report to which objections are made.[18]  The court may accept, reject, or modify, in whole or in part, the magistrate judge's findings and recommendations.[19]  Having now completed a de novo review of this matter, I overrule MedCap's objections and deny its motion.

**B.     Resolving MedCap's Objections**

MedCap first contends that no specific amount of liens was discussed at the settlement conference and "the reality is [that] liens were filed by Plaintiff"—just not on all of the accounts—so there was no mistake or misunderstanding.[20]  But this position cannot be squared with any testimony at the evidentiary hearing.  Mesa's witness, Greg Sundem, testified that Mazzara "said they were all filed" and that "all the liens were perfected."[21]  "Every single lien was perfected is what [Sundem] was told [by Mazzara]."[22]  Mazzara, on the other hand, testified that "the collectibility issue never came up," and the topic of liens was never even broached:

> [Sundem] just said: Hey, could we get the information on the accounts?  And I said yes.  So my – my interaction with him was limited to one or two words.  It was never a discussion.  It was a —never these are collectible; we have liens.  I couldn't tell you if we had liens or didn't have liens.
> . . .
> [A]t no time were liens ever discussed.[23]

---

[16] ECF No. 86.

[17] 28 U.S.C. § 636(b); Nev L.R. IB 3-2(b).

[18] *Id*.

[19] *Id*.

[20] ECF No. 86 at 10–11.

[21] ECF No. 76 at 14:10–21.

[22] *Id*. at 35:25–36:9.

[23] *Id*. at 77:9–23; 81:25–82:1.  Mesa's other witness at the evidentiary hearing was not present at the settlement conference and offered no testimony about what was said there.  MedCap's other

The magistrate judge's recollection of the discussions between the parties is consistent with Sundem's testimony. He "recall[ed] that the parties discussed whether liens had been properly filed by MedCap" and that "these discussions and MedCap's representations that liens had been filed, played an integral role in Mesa's decision to agree to a settlement amount."[24] It was thus reasonable for the magistrate judge to credit Sundem's account of the lien discussion because it was consistent with the judge's own memory—and to reject both Mazzura's testimonial recount and MedCap's argument that the liens were entirely irrelevant to the settlement.[25] Having reviewed the record de novo, I do the same.

MedCap then argues that Mesa's mistaken belief that liens had been filed on all of the accounts is not something MedCap should be punished for. Under Nevada law, MedCap argues, Mesa bore the risk of that mistake because it did not do its homework: the lien information is publicly accessible, so Mesa should have investigated it before coming to the settlement conference and agreeing to a settlement amount.[26] The cases that MedCap cites for this proposition, however, are factually distinguishable and do not justify a conclusion contrary to the magistrate judge's recommendation.

In *Land Baron Investments v. Bonnie Springs Family LP*—which MedCap block quotes with various levels of emphasis but does not meaningfully analyze—the Nevada Supreme Court did refuse to rescind a contract despite a mutual mistake.[27] But the Court's conclusion that Land Baron bore the risk of mistake was based on the fact that "Land Baron entered into the contract

---

witness left the conference early but testified that he did not hear Mazzara make any representations about the liens while he was there. *Id*. at 94–96.

[24] ECF No. 83 at 5.

[25] *See, e.g., Herrnreiter v. Chicago Hous. Auth.*, 281 F.3d 634, 637 (7th Cir. 2002) (recognizing that the judge who presides over a settlement conference may make an enforcement decision based on his recollection of the settlement terms).

[26] ECF No. 86 at 12.

[27] *Land Baron Invs. v. Bonnie Springs Family LP*, 356 P.3d 511 (Nev. 2015).

without conducting any due diligence, hoping that it could procure water, access, and any other utility necessary to obtain development permits." As the Court reasoned, "A hope that things will work out is not the same as a reasonable belief in a set of facts. . . ."

The Nevada Supreme Court applied the same reasoning to hold in *Anderson v. Sanchez* that the husband bore the risk of mistake in a property-settlement agreement when he knew of—but failed to say anything about—his sister's alleged undocumented interest in some real property held in the name of the couple's trust.[28] "It was . . . undisputed that the parties were aware of the facts supporting [the sister's] purported interest in the . . . property when they entered into the" agreement, and if the husband lacked "sufficient knowledge of the legal consequences of any oral agreement with" the sister, "he could have pursued the issue further rather than agreeing to the settlement."[29]

Here, Mesa did not agree to the settlement on the mere hope that the accounts were protected by liens. Nor did it know that the accounts were unprotected but recklessly ignore the legal consequences of that fact. MedCap affirmatively represented that liens had been filed on all of the accounts, and Mesa relied on that express representation when agreeing to pay the settlement amount.[30] It is this express representation, which Mesa did not know was false at the time it was made, that sets Mesa apart from the mistaken parties in *Land Baron* and *Anderson*. Mesa was entitled to rely on MedCap's affirmative representation that the liens had been placed on all of the accounts, and the falsity of that representation precludes me from enforcing the

---

[28] *Anderson v. Sanchez*, 373 P.3d 860 (Nev. 2016).

[29] *Id*. at 863.

[30] *See* ECF No. 76 at 9:13–16 ("Q: Mr. Sundem, if you had known at the time of the settlement conference that the liens had not been filed, would you have settled?  A. No."); ECF No. 83 at 5 (wherein the magistrate judge recounts that the lien-filing "discussions and MedCap's representations that liens had been filed[] played an integral role in Mesa's decision to agree to a settlement amount").

settlement agreement.[31]

## Conclusion

Accordingly, IT IS HEREBY ORDERED THAT

- The Magistrate Judge's Order and Findings and Recommendation regarding the enforcement of the settlement agreement **[ECF No. 83] is ADOPTED in its entirety**;

- Plaintiff's Objection/Appeal of that document **[ECF No. 86] is OVERRULED/ DENIED**;

- Plaintiff's Motion to Enforce Settlement Agreement, Motion for Sanctions, and Motion for Attorney's Fees **[ECF No. 58] is DENIED**.

**This matter is referred to Magistrate Judge Foley for another settlement conference.**

DATED: February 10, 2017

_____
Jennifer A. Dorsey
United States District Judge

---

[31] It did not matter that Mesa did not research the status of the liens before the conference.  Even if it had, MedCap's in-conference representation that the liens had been placed would have given Mesa something new to rely on.